# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN



GROVER SELLERS
ATTORNEY GENERAL

Honorable Joe Reeder, Jr.
County Attorney
Knox County
Benjamin, Texas

Dear Sir:

Opinion No. O-7014

Re: Is property owned and used
exclusively by the Charles
Leroy Teague Post No. 229,
American Legion, Knox City,
Texas, exempt from taxation?

We are in receipt of your letter of December 22, 1945, in which you request the opinion of this Department upon the above question. Upon our request for additional information you advised us that the local post was not incorporated under Texas Laws but that it had been granted a charter by the national organization which you enclosed. You further stated:

"The property upon which an exemption is claimed consists of two lots in the business district of Knox City, and a frame building which is located on these lots.

"In answer to your final question, the use to which the property is put, the above mentioned building is used for the regular legion meetings. This building also contains two pool tables and two domino tables for the exclusive use of the members of the Charles Leroy Teague Post. These recreation facilities are free to the use of the members of the Charles Leroy Teague Post."

Section 2 of Art. VIII of our State Constitution allows the Legislature, by general laws, to exempt from taxation "institutions of purely public charity". The Legislature in accordance with this section passed Article 7150 V.A.C.S., and we quote the pertinent parts of such statute:

"The following property shall be exempt from taxation, to wit:

"Section 7. Public charities.--All buildings
belonging to institutions of purely public charity,
together with the lands belonging to and occupied
by such institutions not leased or otherwise used
with a view to profit, unless such rents and profits
and all moneys and credits are appropriated by such
institutions solely to sustain such institutions and
for the benefit of the sick and disabled members and
their families and the burial of the same, or for
the maintenance of persons when unable to provide for
themselves, whether such persons are members of such
institutions or not. An institution of purely public
charity under this article is one which dispenses its
aid to its members and others in sickness or distress,
or at death, without regard to poverty or riches of
the recipient, also when the funds, property and
assets of such institutions are placed and bound by
its laws to relieve, aid and administer in any way
to the relief of its members when in want, sickness
and distress, and provide homes for its helpless and
dependent members and to educate and maintain the
orphans of its deceased members or other persons. Id."

The purpose for which the national patriotic society was
formed is set out in Title 36 U.S.C.A., Section 43:

"43. The purpose of this corporation shall
be: To uphold and defend the Constitution of the
United States of America; to promote peace and
good will among the peoples of the United States
and all the nations of the earth; to preserve the
memories and incidents of the two World Wars fought
to uphold democracy; to cement the ties and comrade-
ship born of service; and to consecrate the efforts
of its members to mutual helpfulness and service to
their county. As amended Oct. 29, 1942, c. 633, 1,
56 Stat. 1012."

We have been furnished a copy of the national constitution
and by-laws of the American Legion and the 1945-1946 constitution
and by-laws of the American Legion, Department of Texas, and find no
language altering in any way the purposes of the American Legion as
set out in its national charter. The charter of the local post con-
tains the following language:

"By the acceptance of this Charter, the
said Post acknowledges irrevocable jurisdiction
and declares itself to be in all things subject
to the Constitution of the American Legion and
of the Department of Texas, and the rules, regu-
lations, orders and laws promulgated in pursuance
thereof; and further the said Post pledges itself
through its members, to uphold, protect and defend
the Constitution of the United States and the
principles of true Americanism, for the common
welfare of the living and in solemn commemoration
of those who died that liberty might not perish
from the Earth."

In Opinion No. O-747, dated June 2, 1939, this Department
considered the question of liability for franchise taxes of American
Legion Corporations to be organized under Texas Laws, the applications
for charters containing the following "typical" purpose provisions:

"It shall have all the rights, powers and
privileges granted to and conferred upon corpora-
tions by provision of Subdivision 2, Article 1302,
Chapter 1, Title 32, of the Revised Civil Statutes
of the State of Texas, which reads in haec verba:

"'The support of any benovolent, charitable,
educational or missionary undertaking' and particu-
larly including the following:

"'(a) To preserve and strengthen comradeship
among its members; to perpetuate the memory and
history of our dead; to support and maintain
education in the moral, intellectual and physical
development of those who served in, or who may
serve in, the Army, Navy, Marine Corps or Coast
Guard of the United States of America, in any
foreign war, insurrection or expedition, which
service shall be governed by the issuance of a
campaign badge by the Government of the United
States of America; and to maintain true allegiance
to the Government of the United States of America,
and fidelity to its Constitution and Laws; to
foster true patriotism; and to maintain and extend
the institution of American freedom:

"'(b) To act as a charitable and benevolent
organization for the purpose of promoting the
welfare, alleviating the suffering, and assisting
and aiding those who have served, or may serve,
with the military forces of the United States of
America in foreign lands, their widows, orphans
and dependents and relations.'"

The writer of the opinion concluded that American Legion Corporations
were exempt from payment of the franchise tax by reason of Art. 7094,
V.A.C.S. which exempts from such tax corporations organized "for
strictly educational purposes, or for purely public charity."

It would seem that the corporations organized under the
"typical" purpose charter provisions just set out satisfy all the
requirements of such corporations being purely public charities. Even
though the national charter of the American Legion, read in connection
with the charter of the local post, does not present such a clear-cut
case, the authorities discussed below lead us to conclude that the
local post is a public charity, assuming that the local post is con-
ducting its affairs in accordance with the charter provisions.

In Powers v. First National Bank of Corsicana, 137 S. W. (2d)
839, 842, affirmed in 138 Tex. 604, 161 S. W. (2d) 273, Judge Alexander
defines a public charity as follows:

"A public charity or trust is one for the
benefit of the public at large or some substantial
and indefinite portion of it. Charitable purposes
include (a) the relief of poverty; (b) the advance-
ment of education; (c) the advancement of religion;
(d) the promotion of health; (e) governmental or
municipal purposes; and (f) other purposes the
accomplishment of which is beneficial to the commun-
ity. Restatement of the Law of Trusts, p. 1140, Sec.
368; 10 Amer. Jur. 621; 14 C.J.S., Charities, p. 439,
12; Scott on Trusts, 1972; Perry on Trusts & Trus-
tees, Vol. 2, p. 1184."

In the case of Conley v. Daughters of the Republic, 106 Tex.
80, 156 S.W. 197, the court deals with a corporation organized for the
declared purpose of perpetuating the memory and spirit of the men who
achieved Texas's independence, and to encourage historical research
into the early history of Texas, and promote the celebration of

Honorable Joe Reeder, Jr. - Page 5


Independence Day of the Texas Republic, and erect monuments upon places made historic in the war for Texas's independence. The court held that the society was properly incorporated as an "educational undertaking" within the second subdivision of Article 1121, Revised Statutes, which wording is identical with that of Section 2 of Article 1302, Vernon's Annotated Civil Statutes.

The Court in the Conley Case, supra, explains the term "educational" as follows:

"The purpose of this corporation is clearly 'educational'. Whatever educates is within the meaning of 'educational undertaking'. Education in the sense as used in the statute includes: 'In its broadest sense, . . . not merely the instruction received at school or college, but the whole course of training, moral, intellectual and physical; is not limited to the ordinary instruction of the child in the pursuits of literature. It comprehends a proper attention to the moral and religious sentiments of the child. And it is sometimes used as synonymous with "learning".' 14 Cyc. p. 1230. The sentiment of regard for the memory of those who gave their lives for the blessings of this great state stimulates patriotism, and is in the highest sense educational. The facts to be preserved furnish the means of the best education for the young men and women of this state. The purpose is laudable in its influence upon the present generation; it is laudable, educational, and benevolent for the future citizens." (emphasis supplied)

Since the purpose clause contained in the national charter of the American Legion shows very clearly that the corporation is an "educational institution" and that the corporation is not formed for private profit or gain, it must be held that the local post is a public charity. If an institution is devoted to public education without private gain it is an institution of public charity. Southern Methodist University v. Clayton, 142 Tex. 179, 176 S.W. (2d) 749, 750; see also Powers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W. (2d) 273, 280, and the opinion of the Court of Civil Appeals in the same case, recorded in 137 S.W. (2d) 839.

As additional authority for holding the local post to be a public charity, we cite the case of Bodenheimer v. Confederate Memorial

Association, 68 Fed. (2d), 507, certiorari denied, 292 U.S. 629, 54 Supreme Court, 643, 78 Law Ed. 1483. The court held the Association to be a public charity because the court found it was incorporated for the following purposes:

> ". . . to erect and maintain a Confederate Memorial Institute, and there to collect, arrange and preserve statues, portraits, photographs, and historical data relating to the Southern Confederacy, calculated to enable future historians to obtain such reliable facts and data as will assist them in writing fair, accurate and impartial history of said war and of the South, the said association being educational, patriotic and historical at all times."

Although we have decided that the local post is a purely public charity, the use to which the building is put poses a more difficult question. The rule is well settled that the use of a building, even though the institution be one of "purely public charity", must be for exclusively charitable purposes. B.P.O.E. Lodge v. City of Houston, 44 S.W. (2d) 488. The question of exclusive use for such purpose is entirely one of fact and you have not stated, and we do not know, the extent of the use of the two pool tables and two domino tables. We are inclined to believe that an incidental, occasional or sporadic use of these amusements by the members on meeting nights and similar occasions would not take away the ad valorem tax exemption. However, if the building is used as a social club by the members of the local post, the rule announced in the case just cited would apply, and the building and grounds would not be tax exempt.

We trust the foregoing discussion fully answers the question asked.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Woodrow H. Edwards_
Woodrow H. Edwards
Assistant

WHE:ms

APPROVED OPINION COMMITTEE BY JWB CHAIRMAN